## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

JOHN GRESHAM, ET AL.,           )
                                )
                Plaintiffs,     )
vs.                             )          NO.  CIV-12-0698-HE
                                )
HERITAGE FINANCIAL GROUP, INC., )
ET AL.,                         )
                                )
                Defendants.     )

## ORDER

Plaintiffs have moved for summary judgment.  Defendant Ronald LeGrand, proceeding *pro se*, has responded.  All other defendants have not responded.  After considering the submissions of plaintiffs and LeGrand in the circumstances of this case, the court concludes the motion must be denied in its entirety and the case transferred to the federal district court, Southern District of Texas.

### Background

This dispute arose out of a real estate development deal in Texas.  It is undisputed that plaintiff MIGM Enterprises, Inc., a Texas corporation ("MIGM"), entered into an agreement on August 24, 2006, to sell certain real estate located in Mission, Texas.  Signing the contract as buyer was defendant Heritage Financial Group, Inc. ("Heritage Financial").  The property included both developed building lots and approximately 35 acres of undeveloped land.  The purchase price was to be $2,700,000, with $775,000 of the purchase price being seller-financed.

Following a period for investigation and due diligence, the sale closed on April 2,

2007.  The parties apparently resolved disagreements which had occurred in the meantime and closed on the basis of a somewhat modified deal, as set out in a Partial Release and Escrow Agreement dated that day.  Among other things, that agreement changed the purchaser to an entity named Meadow Creek Golf Estates, LLC, a Texas limited liability company ("Meadow Creek" ).  It obligated Meadow Creek to execute a note for the $775,000, to be secured by a second priority deed of trust on the property.  It included provisions for partial releases of the second mortgage as lots were sold, with releases being given by MIGM or its agent upon payment of $3000 per lot.  The per lot payment was to be tendered to an escrow holder, apparently a Texas bank,[1] which was to hold the payments until the maturity of the promissory note two years later.

The development was not successful.  By September, 2008, the deal was in trouble, with Meadow Creek seeking further modifications from MIGM of the original arrangement.[2] No modifications were agreed to.  By April 2009, the holder of the first mortgage declared it to be in default and foreclosed on the property.

Plaintiffs indicate the second mortgage to MIGM has not been paid.  Here, they assert claims for breach of contract, fraud in the inducement, bad faith breach of contract, and

---

[1]*The agreement designated the escrow holder as seller's agent for purposes of executing the partial releases.*

[2]*The negotiations were between plaintiff Gresham, the president of MIGM, and Mark LaPoint, a vice-president of Heritage Financial.  The Partial Release and Escrow Agreement identifies Meadow Creek as the buyer of the property, with Heritage Development Group LLC being its sole manager.  It further identifies Heritage Financial as the sole manager of Heritage Development Group LLC.*

conspiracy, all arising from the non-payment of the debt.  They also apparently seek additional damages based on the assumption that, had they known of the foreclosure sooner, they could have redeemed the property and made money on it some other way.[3]

Discussion

The problems with this case are legion.  At the time it was filed, the cover sheet indicated the basis for jurisdiction in this court was the existence of a federal question [Doc. #1-6].  The case did not, however, involve a federal question and was properly brought in federal court only if there was a basis for diversity jurisdiction.  As originally filed, one plaintiff (MIGM) was a Texas corporation and one defendant (Meadow Creek) was also a Texas entity, so diversity did not exist.  Following a status conference at which the problem was noted, plaintiffs sought to remedy it by dismissing Meadow Creek from the case [Doc. #20].  As a result, the entity which executed the promissory note sued on here, and the related mortgage, is no longer a party.

As to the remaining defendants, Ronald F. LeGrand and Heritage Development Group LLC have appeared.  LeGrand is proceeding *pro se* and has filed an answer, in addition to his response to the summary judgment motion.[4]  Heritage Development Group LLC appeared briefly by counsel, but its counsel withdrew and has not been replaced and no answer has

---

[3]*Plaintiffs' motion seeks $3.0 million in compensatory damages, based on $2,000,000 for "loss of value of the property."  The basis for this request is unclear; nothing in the complaint suggests such a recovery is sought and there is no evidentiary support for the request in plaintiffs' motion/brief.*

[4]*His pleading is labeled a "motion to dismiss" plaintiffs' motion but is, in substance, a response.*

3

been filed on its behalf.  Defendants Heritage Financial and Frederick E. Wheat Jr. have not appeared.[5]  Service on Heritage Financial appears to have been made.[6]  Service on Wheat appears not to have been made.  Mail service was attempted.  The return receipt appears to have been signed by someone named "Barbara Hawkins," but her relationship to Wheat, if any, is not indicated [Doc. #25].

The next problem is as to the status of the plaintiffs and the concerns which flow from that.  The complaint somewhat ambiguously identifies the plaintiff as "John Gresham and/or MIGM Enterprises" [Doc. #1].  So far as the court can determine from the parties' submissions, none of the claims asserted here are actually those of Mr. Gresham personally.  The owner of the property in Texas at the time of the sale was MIGM.  The original sale agreement recites that the seller is "John Gresham, President, MIGM Enterprises, Inc."  The revised agreement (Partial Release and Escrow Agreement - Doc. #28-7] clearly identifies MIGM as the seller, with Gresham signing the agreement as its president.  The payee of the promissory note [Doc. #28-8] is MIGM.  In short, none of the claims are those of Mr. Gresham personally.[7]  To the extent that the current motion seeks summary judgment on

---

[5]*Plaintiff's submissions suggest Mr. Wheat submitted an answer to plaintiffs, but did not file it in the case [Doc. #28-13].  That "answer" is very similar in structure to the pro se answer filed by Mr. LeGrand [Doc. #4].*

[6]*The return of summons indicates a service company in Nevada, presumably the service agent for the company, was served by mail [Doc. #27].  The receipt is not signed by anyone, but has a company stamp affixed indicating receipt.*

[7]*Even as to the purported fraud claims, there is nothing to suggest a basis for harm to Mr. Gresham personally, as opposed to MIGM.*

4

behalf of Mr. Gresham, it plainly must be denied.

The absence of a colorable claim on behalf of Mr. Gresham gives rise to other concerns. He is apparently a resident of Oklahoma [Doc.#1, para. 2], and that appears to be this case's only obvious connection to this state. MIGM is a Texas corporation. The complaint does not explicitly say where MIGM's principal place of business is, or whether it engaged in activities other than holding ownership of the land involved here, but the circumstances suggest its activities were in Texas. While the complaint makes conclusory references to the defendant corporations "soliciting business" in Oklahoma, the court is left with a considerable concern that minimum contacts with Oklahoma necessary to the exercise by this court of personal jurisdiction over the defendants are lacking.

Similarly, venue is very likely improper in this court. The real estate is in Texas. The seller is a Texas corporation. The buyer (Meadow Creek) is a Texas LLC. The revised sales agreement provides that Texas law shall govern its interpretation and that the parties' obligations under it are "performable in Hidalgo County, Texas" [Doc. #28-7, para. 5]. The escrow holder authorized to receive partial release payments and execute releases was a Texas bank. The promissory note recites that Hidalgo County, Texas, is the place for payments on the note [Doc. #28-8, p. 1]. While there may be circumstances related to the residence of Mr. Gresham that would make venue proper here, it seems unlikely.

As to both personal jurisdiction and venue concerns, the court would normally expect the parties to raise those questions for resolution by the court. However, given that one defendant is *pro se* and the others have not appeared at all, that approach is more problematic

5

than in the ordinary case.

The substantive grounds for recovery urged by plaintiffs are also problematic. The underlying dispute here is essentially non-payment of the $775,000, i.e. plaintiffs' contract claim. However, in pursuit of diversity jurisdiction, plaintiffs have dismissed the only defendant which was actually a party to the contract. Meadow Creek signed the purchase agreement. Meadow Creek was the maker of the note. And Meadow Creek is gone. Heritage Development Group, LLC, also signed the note, but in the capacity of manager of Meadow Creek, an LLC and the maker. Heritage Financial signed the note, but in the capacity of manager of Heritage Development Group LLC. Mr. Wheat signed the note, but in the capacity of CEO and President of Heritage Financial. A manager of an LLC does not become liable on entity obligations merely by being the manager. Shook v. Walden, 368 S.W.3d 604, 613 (Tex.App.-Austin 2012). Similarly, a corporate officer does not become liable for corporate debts merely by signing as an officer. Williams v. Bell, 402 S.W. 3d 28, 35-6 (Tex.App.-Houston 2013). So far as the court can determine, Mr. LeGrand has not signed anything that could be the basis for him being liable on the contract. In short, plaintiffs have failed to make even a prima facie showing of liability on the contract claim as to any of the remaining defendants.

The complaint also alleges a claim for fraud in the inducement. The complaint does not come remotely close to the level of specificity required to assert a fraud claim, at least if any defendant appeared to raise the issue. *See* Fed.R.Civ.P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud ....") The

6

closest thing to a specific allegation is plaintiffs' allegation that, during negotiations, defendants LeGrand and Wheat gave their "personal guarantee" as to repayment of the loan. However, plaintiffs' summary judgment motion offers nothing to support that assertion. Paragraph 4 of their "incontrovertible" facts [Doc. #28, pp. 4-5] makes the assertion, but cites no supporting evidence as required by Rule 56. *See* Fed.R.Civ.P. 56(c)(1)(A). Indeed, as defendant LeGrand points out, the materials submitted suggest the contrary. The note itself [Second Lien Promissory Note, Doc. #28-8] includes a paragraph titled "Security for Payment" which refers only to the second mortgage as security for the loan. There is thus, at the very least, a factual dispute as to whether "guarantees" by LeGrand and Wheat were given.[8] Further, there is no evidence supporting the assertion that such representations, if made, were knowingly false at the time.[9] There is no basis for summary judgment in plaintiffs' favor on the purported fraud claim.

Plaintiffs' "bad faith" contract claim has the same factual basis as the fraud claim and is subject to the same infirmities. Similarly, the "conspiracy" claim is not supported by any evidence.

---

[8]*Plaintiffs appear to be relying on oral "guarantees," as they do not attach or mention any sort of written guaranty. To the extent plaintiffs assert contract claims based on the oral "guarantees," the claims would be barred by the statute of frauds. See Section 26.01, Texas Business and Commerce Code. Most jurisdictions have comparable statutes.*

[9]*Plaintiffs point to letters sent by LeGrand and Wheat to plaintiff's counsel after this suit was filed, referencing their or their companies' current financial circumstances, as proof that their promises to pay the debt were false when made [Doc. Nos. 28-12 and 28-13]. However, as Mr. LeGrand argues, financial distress in 2011 (Wheat letter) and 2012 (LeGrand letter) does not support an inference that promises to pay made in 2007 were false.*

In short, plaintiffs have not shown a basis for summary judgment in their favor on any claim and their motion must be denied.

The question then become how, or whether, this case should go forward.  Ordinarily, the denial of summary judgment would mean the case proceeds to trial.  The trial in this case is now set on the court's September 2013, docket.  However, the case is not ready for trial.  The court's scheduling order required that witness and exhibit lists be filed by May 1, 2013.  None were filed by that date.  The court noted their absence in its June 18, 2013, order, but none have yet been filed.  A proposed pretrial order was recently filed by plaintiffs, apparently unilaterally without input from any defendant, but the required lists have not been submitted.

The net result is that the court is faced with a case where most of the defendants are not here to defend, personal jurisdiction over some or all of them is likely lacking, venue appears to be improper, one plaintiff's claims are plainly invalid and the claims of the other are more than a little doubtful, plus the entire case is not ready for trial.  This extraordinary combination of circumstances leads the court to conclude that it should, in the unique circumstances of this case, resolve the venue issue *sua sponte*.  Normally the court would simply dismiss the case and leave plaintiffs free to pursue it in a proper forum if, after a more focused analysis of the various issues and circumstances, they chose to do so.  However, there may be a statute of limitations issue if the action is dismissed.  Therefore, the court transfers the case on the grounds of improper venue and *forum non conveniens* to the federal district court, Southern District of Texas.  28 U.S.C. §§ 1406(a), 1404(a).

8

For the reasons state

d, plaintiffs' motion for summary judgment [Doc. #28] is **DENIED**.  This case is **TRANSFERRED** to the federal district court, Southern District of Texas.

**IT IS SO ORDERED**.

Dated this 20th day of August, 2013.

JOE HEATON
UNITED STATES DISTRICT JUDGE